*In re* ÁNGEL FIGUEROA VIVAS.

*Número:* TS-4270        *Resuelto:* 18 de octubre de 1999

*Marcos A. Ramírez Lavandero* y *Eduardo A. Vera Ramírez*, abogados de Héctor Rivera Cruz, peticionario; *Hon. Abner Limardo Sánchez*, Comisionado Especial; *Carlos Lugo Fiol, Procurador General*, y *Edna Evelyn Rodríguez Benítez, Procuradora General Auxiliar; Irma R. Valldejuli* y *Héctor Santiago Rivera*, abogados del Lic. Ángel Figueroa Vivas.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

¿Está protegido por la cláusula de inmunidad parlamentaria el ex investigador especial del Senado, el Lic. Héctor Rivera Cruz, de ser compelido a comparecer a la vista de reapertura del proceso disciplinario del Sr. Ángel Figueroa Vivas que se ventila ante un Comisionado Especial de este Tribunal? En el caso de autos el licenciado Rivera Cruz nos solicita que revisemos la decisión del Comisionado Especial que denegó su petición de que se dejara sin efecto su citación al amparo de la Cláusula de Inmunidad Parlamentaria de nuestra Constitución. Revocamos.

I

El Sr. Ángel Figueroa Vivas solicitó que se expidiese una citación al Lic. Héctor Rivera Cruz para que compare-

ciese a prestar testimonio en el caso de reapertura de su procedimiento disciplinario que en la actualidad pende ante este Tribunal y se ventila ante el Comisionado Especial, Hon. Abner Limardo Sánchez. Adujo que dicha comparecencia era indispensable para demostrar la existencia de alegada prueba exculpatoria o favorable que le fue ocultada durante el procedimiento disciplinario original en su contra, que culminó en su separación permanente de la abogacía el 21 de febrero de 1991. *In re Colton Fontán*, 128 D.P.R. 1 (1991). Expresó que dicha prueba serviría para demostrar que no era responsable de los cargos disciplinarios imputados.

Rivera Cruz acudió ante nos y solicitó que se dejara sin efecto la citación. Argumentó que, debido a la naturaleza del recurso, cualquier testimonio relevante que él pudiese ofrecer versaría sobre sus gestiones como investigador especial senatorial de los sucesos del Cerro Maravilla. Sobre dichas gestiones invocó la Cláusula de Inmunidad Parlamentaria consagrada en la Sec. 14 del Art. III de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1.

Inicialmente declinamos intervenir en esa etapa, sin perjuicio de que reprodujese su solicitud ante el Comisionado Especial. Realizado ese trámite, el Comisionado Especial denegó el pedido de Rivera Cruz y le ordenó comparecer, por entender que el derecho de Figueroa Vivas a presentar prueba en apoyo de su solicitud de reapertura debía prevalecer sobre la inmunidad legislativa.

Rivera Cruz nos solicitó que revisáramos esa determinación. Interinamente dejamos en suspenso su citación hasta tanto adjudicásemos el asunto, y ordenamos al Procurador General, a Figueroa Vivas y a Rivera Cruz exponer sus respectivas posiciones en torno al planteamiento sobre inmunidad parlamentaria. Resolvemos.

## II

■ Recientemente, en *Pres. del Senado*, 148 D.P.R. 737 (1999), analizamos los contornos de la Cláusula de Inmunidad Parlamentaria de nuestra Constitución. Allí advertimos que su alcance es amplio y que responde a la necesidad de garantizar la independencia de la Rama Legislativa frente a los otros poderes del Gobierno, fortaleciendo de ese modo el sistema de separación de poderes en el que descansa nuestra arquitectura constitucional de gobierno democrático. *Romero Barceló v. Hernández Agosto*, 115 D.P.R. 368 (1984).

Expresamente reconocimos que la Cláusula de Inmunidad Parlamentaria, además de consagrar un derecho de inmunidad sustantiva que cobija los actos legislativos legítimos de los miembros de la Asamblea Legislativa, ofrece la protección, en calidad de privilegio evidenciario, contra todo requerimiento compulsorio ante cualquier otro foro que no sea el legislativo. Aclaramos, también, que el criterio al determinar el alcance de la Cláusula de Inmunidad Parlamentaria en su dimensión evidenciaria es el mismo que en su vertiente de inmunidad sustantiva. Es decir, el privilegio protege solamente aquellas comunicaciones que forman parte del proceso legislativo legítimo. *Pres. del Senado*, supra.

■ La inmunidad legislativa se extiende a toda actividad legislativa legítima, independientemente de si el titular del privilegio es en el presente o fue en el pasado miembro de la Asamblea Legislativa de Puerto Rico. El factor determinante es si la conducta en que incurrió o las expresiones que hizo se realizaron mientras el titular pertenecía a la Asamblea Legislativa y estaba en el desempeño de sus funciones. *Pres. del Senado*, supra; *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9no Cir. 1983). Una vez determinado que dicha actividad forma parte de

una actividad legislativa legítima, el funcionario no puede ser cuestionado en ningún otro foro, y tal prohibición es absoluta. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975); *Doe v. McMillan*, 412 U.S. 306 (1973); *United States v. Brewster*, 408 U.S. 501 (1972).

■ Jurisprudencialmente también hemos establecido que la inmunidad parlamentaria se extiende a los ayudantes legislativos cuando sus actuaciones son parte del proceso legislativo, siempre y cuando hubiesen gozado de inmunidad de haberlas realizado el propio legislador; lo importante es el acto, no quien lo lleva a cabo. *Silva v. Hernández Agosto*, 118 D.P.R. 45 (1986); *Gravel v. United States*, 408 U.S. 606 (1972).([1])

■ Aunque el privilegio de inmunidad parlamentaria puede ser renunciado por uno de los miembros de la Asamblea Legislativa, tal renuncia debe ser explícita e inequívoca, y sólo puede afectar la situación particular de dicho miembro. La renuncia no puede comprometer el privilegio que ampara a la Legislatura como Cuerpo. *United States v. Helstoski*, 442 U.S. 477 (1979). Respecto a la posibilidad de que la propia Asamblea Legislativa renuncie a dicho privilegio a nombre de sus miembros, ello requiere que se haga mediante expresión legislativa clara e inequívoca. *Íd.*, págs. 491–494.

## III

A la luz de este trasfondo doctrinal, evaluamos el pedido de Rivera Cruz de que no puede ser compelido a comparecer a la vista de reapertura del proceso disciplinario de

---

[1] En la jurisdicción federal, la Corte de Distrito Federal para el Distrito de Puerto Rico resolvió específicamente que un investigador de una Comisión Especial está protegido por la Cláusula de Inmunidad Parlamentaria, con relación a su participación y sus gestiones en tal capacidad. *Romero-Barceló v. Hernández-Agosto*, 75 F.3d 23, 31 (1er Cir. 1996).

Figueroa Vivas por estar protegido por el privilegio evidenciario de la Cláusula de Inmunidad Parlamentaria.

■ No existe controversia de que Rivera Cruz fungió como investigador especial de la Comisión de lo Jurídico del Senado durante la investigación de los sucesos en el Cerro Maravilla. En esa capacidad, dirigió y coordinó la investigación que llevó a cabo la Comisión de los Jurídico del Senado al amparo de una facultad investigativa, parte esencial del proceso legislativo. *Pres. del Senado*, supra; *Romero-Barceló v. Hernández-Agosto*, 75 F.3d 23 (1er Cir. 1996).

■ Un examen de las actividades llevadas a cabo por Rivera Cruz como investigador especial senatorial demuestra que de haber sido realizadas directamente por los legisladores miembros de la Comisión de lo Jurídico del Senado, éstos estarían inmunes de testificar en un procedimiento como el que nos ocupa, pues el privilegio de inmunidad legislativa abarca toda actividad legislativa en el hemiciclo y las comisiones, incluso los procesos de deliberación, comunicación, investigación, información y todos aquellos actos necesarios para el desarrollo del quehacer legislativo. *Vélez Ramírez v. Colberg Ramírez*, 117 D.P.R. 873 (1986); *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983).

En estas circunstancias, no cabe duda de que el privilegio de inmunidad legislativa subsiste y protege a Rivera Cruz en el desempeño de sus pasadas actividades como investigador senatorial, por lo cual no puede ser compelido a comparecer ante el Comisionado Especial. Dicho privilegio subsiste en toda su fuerza y vigor, aunque Rivera Cruz ya no forme parte de la estructura investigativa del Senado.

## IV

Esta conclusión no queda afectada por el hecho de que el Senado nos remitiese un informe[2] sobre las actuaciones de Figueroa Vivas que dicho Cuerpo entendía que constituían violaciones a los cánones de ética profesional. Ese trámite no configura ni constituye una renuncia del Senado al privilegio de inmunidad parlamentaria.

Cabe recordar que el Senado realiza, en el descargo de sus funciones legislativas, numerosas investigaciones a través de sus Comisiones permanentes o especiales. Como parte de dichas investigaciones, el Senado tiene la facultad de referir los asuntos que investiga a la instrumentalidad gubernamental o al poder constitucional con autoridad para atenderlos. Resolver que tales trámites implican una renuncia de la Asamblea Legislativa al privilegio de inmunidad parlamentaria, anularía precisamente una de sus prerrogativas más importantes: *la investigación legislativa*. Reiteramos que para que exista tal renuncia es menester que sea explícita e inequívoca, y sólo a considerarse en circunstancias extraordinarias, previa legislación al respecto. *United States v. Helstoski*, supra.

Por los fundamentos expuestos, *se deja sin efecto la citación del Comisionado Especial que ordenó la comparecencia del Lcdo. Héctor Rivera Cruz a los procedimientos de reapertura del caso disciplinario del señor Figueroa Vivas.*

*Se dictará la sentencia correspondiente.*

El Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón se inhibieron. El Juez Asociado Señor Rebollo López no interviene. El Juez Asociado Señor Fuster Berlingeri no intervino.

---

[2] Los documentos que acompañaron el informe fueron recopilados por el Lcdo. Héctor Rivera Cruz.